UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIC T. THAI, : | Case No. 3:22-cv-605 (SVN) |
| *Petitioner,* : | |
| : | |
| v. : | |
| : | |
| T. PULLEN, : | |
| *Respondent.* : | December 1, 2022 |

**RULING AND ORDER ON RESPONDENT'S MOTION TO DISMISS**

Petitioner Eric. T. Thai, who is currently incarcerated at the Federal Correctional Institution in Danbury, Connecticut, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, asking the Court to expunge a disciplinary report and restore forty-one days of good conduct time that was forfeited as a disciplinary sanction. In response to the order to show cause, Respondent has filed a motion to dismiss the petition. Because Petitioner has not exhausted his administrative remedies, the motion to dismiss is GRANTED.

I.  **FACTUAL BACKGROUND**

Petitioner alleges the following facts in the petition, which are taken as true for purposes of addressing Respondent's motion to dismiss. On October 13, 2021, Petitioner was required to submit a urine sample for drug and alcohol testing, but he could not produce urine. Ex. B. to Pet., ECF No. 1-3 at 2; Mem. in Supp. of Pet., ECF No. 1-1, ¶ 5. At the time of the testing, Petitioner informed the officers present that, as prison medical staff are aware, he takes metformin, a medication to treat his diabetes. Mem. in Supp. of Pet. ¶ 5. According to Petitioner, the literature distributed with the drug states that the medication makes urination difficult. *Id.* Petitioner alleges that Officer Velez, who coordinates the facility's drug treatment program, confirmed this side

effect. *Id.* Nevertheless, Petitioner was told that he violated Code 110 of the Bureau of Prison's Inmate Discipline Program by refusing to take the test, and he was taken to the Special Housing Unit ("SHU"), which he alleges is akin to "solitary confinement." Mem. in Supp. of Pet. ¶ 1. Petitioner received an official incident report informing him of the charge and was scheduled for a hearing before a disciplinary hearing officer. *Id.* ¶ 2.

Prior to his disciplinary hearing, Petitioner tried to contact his primary care provider, United States Public Health Service ("USPHS") officer Lt. Escobar, but received no response. *Id.* ¶ 6. On October 21, 2021, Petitioner attended a disciplinary hearing before Hearing Officer Amico. *Id.* ¶ 3. Petitioner contends that Amico denied his initial request for a staff representative at the hearing, pressured him to proceed without a representative, and did not adequately consider Petitioner's arguments. *Id.* In addition, Amico contacted a non-USPHS officer Gibson, who stated that Petitioner had no condition that would interfere with the testing process. *Id.* ¶ 6. Petitioner states that Gibson had no knowledge of his medical situation, and Petitioner was not permitted to challenge his statements. *Id.* Petitioner also contends that he received unfair treatment in the disciplinary hearing because he is serving a federal sentence for a sex offense, and "sex offenders are frequently the target of abuse and undue scrutiny." *Id.* ¶¶ 4, 7.

Petitioner was found guilty of the disciplinary charge. *Id.* ¶ 9. According to Amico's disciplinary report, Petitioner was sanctioned with loss of forty-one days of good conduct time, three months of commissary privileges, and six months of visits. *Id.* ¶ 9; Ex. B to Pet., ECF No. 1-3, at 4. In addition, he was required to remain in SHU for an additional thirty days. Mem. in Supp. of Pet. ¶ 9. Petitioner alleges, however, that Amico stated during the hearing that the sanctions would be loss of thirty-one days of good conduct time, two months of commissary

privileges, and three months of visits. *Id.* ¶ 10.

According to Petitioner, he appropriately appealed the disciplinary report through the administrative remedy process. Petitioner sets forth the following history related to that process. Specifically, on December 28, 2021, he submitted a BP-10 form to the Northeast Regional Office of the Bureau of Prisons ("BOP"). *Id.* ¶ 11. The Regional Office's response deadline for this form was extended to February 26, 2022. ECF No. 1-2 at 2. Petitioner did not receive a response by that date. *Id.* at 4. On March 7, 2022, Petitioner elevated the appeal to the Office of General Counsel on a BP-11 form. *Id.* at 2. On March 9, 2022, he wrote to the Regional Office to inquire about the status of his Regional Office BP-10 appeal; this letter was received at the Regional Office on March 14, 2022. *Id.* at 3–4.

On March 31, 2022, Petitioner received a "rejection notice" from the Regional Office; while he contends that this rejection stated his appeal was untimely, *see id.*, it actually provides that he submitted the appeal at the wrong level, and that it should have been submitted to the Central Office.[1]  ECF No. 1-2 at 3. On April 16, 2022, Petitioner received a second response from the Regional Office denying his appeal. *Id.* The second response was dated February 25, 2022, but not mailed until March 23, 2022. *Id.* Petitioner does not indicate whether he received a response from the General Counsel regarding his BP-11 appeal.

In April of 2022, Petitioner filed the present petition pursuant to 28 U.S.C. § 2241. Pet., ECF No. 1. Thereafter, Respondent, the Warden of the Danbury Federal Correctional Institution, filed the present motion to dismiss, ECF No. 5. Respondent moves to dismiss the petition on three grounds: (1) Petitioner failed to properly exhaust his administrative remedies, (2) Petitioner was

---

[1] The March 31, 2022, rejection notice appears to be the response to Petitioner's March 9, 2022, inquiry, as that inquiry was stamped as received at the Regional Office on March 14, 2022. ECF No. 1-2 at 4.

3

afforded all process that was due at the disciplinary hearing, and (3) the disciplinary finding comported with the "some evidence" rule governing prison disciplinary hearings.

## II. LEGAL STANDARD

### A. Section 2241

Section 2241 grants federal courts jurisdiction to issue writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus under § 2241 "is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). An inmate may challenge under § 2241, for example, "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001).

### B. Rule 12(b)(6)

A motion to dismiss a habeas petition, like any other motion to dismiss a civil complaint, is governed by Federal Rule of Civil Procedure 12(b)(6). *Spiegelmann v. Erfe*, No. 3:17-CV-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018); *Anderson v. Williams*, No. 3:15-CV-1364 (VAB), 2017 WL 855795, at *5–6 (D. Conn. Mar. 3, 2017) (reviewing motion to dismiss § 2241 petition under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)). To survive dismissal, the petition must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "detailed factual allegations" are not required, a complaint must offer

more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57.

Because Petitioner filed the present petition *pro se*, the Court must construe his filings "liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). "Despite the special solicitude that the Court must show [Petitioner] out of consideration for his *pro se* status, his petition must still include sufficient factual allegations to meet the standard of facial plausibility to survive a motion to dismiss under Rule 12(b)(6)." *Anderson v. Williams*, No. 3:15-CV-1364 (VAB), 2017 WL 855795, at *6 (D. Conn. Mar. 3, 2017) (citation and internal quotation marks omitted).

In considering a motion to dismiss, the court typically may consider only the complaint, or, here, the petition. However, the petition "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as any documents deemed "integral" to the petition. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations and internal quotation marks omitted). *See also Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (explaining that, in considering a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint"). To that end, because the petition relies on records relating to Petitioner's exhaustion of remedies, and because such records are integral to the complaint, the Court will consider the documents relating to the exhaustion of administrative remedies in this case, some of which were attached as Exhibits A and B to the petition and others of which were submitted by Respondent in support of the motion to dismiss.

### C. Exhaustion

Before filing a habeas petition pursuant to § 2241, prisoners are required to exhaust internal grievance procedures. *Carmona*, 243 F.3d at 634; *see also Razzoli v. Strada*, No. 10-cv-4802 (CBA), 2013 WL 837277, at *2 (E.D.N.Y. Mar. 6, 2013) (citing *Carmona*, 243 F.3d at 634). The exhaustion requirement applicable to § 2241 petitions is judicial, rather than statutory. *See Carmona*, 243 F.3d at 634 ("[A]lthough § 1997e(a) of the Prisoner Litigation Reform Act contains a statutory administrative exhaustion requirement, we have held, in the context of a § 2254 petition, that the requirements of the Act do not apply to habeas proceedings. . . . Doubtless the same rule should obtain in § 2241 cases as in § 2254 petitions.") (cleaned up); *see also Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (noting that the distinction between a statutorily or judicially imposed exhaustion requirement is "pivotal" because "statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions"); *Zucker v. Menifee*, No. 03 CIV. 10077 (RJH), 2004 WL 102779, at *4 (S.D.N.Y. Jan. 21, 2004) (noting that the exhaustion requirement for § 2241 petitions is "prudential, not statutory"). The burden of demonstrating exhaustion of administrative remedies rests with the § 2241 petitioner, *Spring v. Schult*, No. 908-CV-0531 (LEK), 2009 WL 3232183, at *1 (N.D.N.Y. Oct. 1, 2009), and failure to exhaust administrative remedies "results in a procedural default." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009); *see also Woodford v. Ngo*, 548 U.S. 81, 92 (2006) ("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default.").

The Second Circuit has identified four bases to excuse administrative exhaustion in the habeas context: "(1) available remedies provide no genuine opportunity for adequate relief; (2)

irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry*, 329 F.3d at 62; *Anderson*, 2017 WL 855795, at *7 (applying the four categories identified in *Beharry* to a § 2241 habeas petition). *See also Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 437 (D. Conn. 2020) (considering a § 2241 petition and listing the exceptions to the administrative exhaustion requirement as: "futility ('exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue'); incapability ('exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief'); and undue prejudice ('an unreasonable or indefinite timeframe for administrative action may sufficiently prejudice [petitioners] to justify a federal court in taking a case prior to the complete exhaustion of administrative remedies')") (citations omitted).

Relevant here, the BOP has a four-step process for inmates to exhaust administrative remedies: (1) informal resolution with prison staff, 28 C.F.R. § 542.13(a); (2) an initial formal request submitted to the Warden, *id.* § 542.14; (3) an appeal to the appropriate BOP Regional Director using a BP-10 form, *id.* § 542.15(a); and (4) a subsequent appeal to the BOP General Counsel using a BP-11 form, *id.* An administrative appeal is not fully exhausted until it has been considered by the General Counsel's Office according to the proper deadlines and procedural rules. *Id.*; *South v. Licon-Vitale*, No. 3:19-cv-1763 (VLB), 2020 WL 3064320, at *1 (D. Conn. June 9, 2020). *See also Woodford*, 548 U.S. at 91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); *Gordon*

7

*v. Lappin*, No. 07-Civ.-10948, 2008 WL 4179233, at *3 (S.D.N.Y. Sept. 10, 2008) (finding a § 2241 petition procedurally defaulted pursuant to *Woodford*, 548 U.S. at 91, because the petitioner's appeal was rejected for procedural defects, including untimeliness).

For an appeal relating to a disciplinary proceeding, the inmate begins the appeal process at the third level by sending the BP-10 appeal form to the Regional Director. 28 C.F.R. § 542.14(d)(2). The inmate has twenty days from receipt of the disciplinary hearing report to submit the BP-10 appeal form to the Regional Director. *Id.* § 542.14(a). The Regional Director must respond to the appeal within thirty calendar days unless the Regional Director extends this time period and informs inmate of the extension in writing. 28 C.F.R. § 542.18. In a case where the Regional Director responds to the BP-10 form, an inmate who is not satisfied with the Regional Director's response can submit a B-11 form to the BOP General Counsel within 30 days of the date the Regional Director signed his or her response; if the inmate demonstrates a valid reason for the delay, these time limits may be extended. 28 C.F.R. § 542.15(a). In a case where the inmate does not receive a response within the allotted time, he "may consider the absence of a response to be a denial at that level," and proceed to the next step of the administrative remedy process. 28 C.F.R. § 542.18.

### III. DISCUSSION

Respondent contends that Petitioner failed to exhaust administrative remedies and thus has procedurally defaulted on the claim set forth in the petition. First, Respondent argues that Petitioner failed to timely file his BP-10 appeal to the Regional Director. As noted above, the deadline for doing so was twenty days from receipt of the disciplinary hearing report; here, Petitioner received the disciplinary hearing report on November 3, 2021, *see* Decl. of Cheryl

Magnusson, Exhibit B, ECF No. 5-3, at 16, so his deadline for filing the BP-10 appeal was November 23, 2021. Although the appeal form bears a handwritten date of November 19, 2021, *see* ECF No. 5-3 at 23, it is undisputed that Petitioner did not file the appeal until December 28, 2021, rendering the appeal untimely on its face. *See id.* at 20; ECF No. 1-2 at 2. Petitioner has provided the Court, however, with a memorandum from a correctional counselor dated December 19, 2021, stating that Petitioner was unable to create the necessary copies for his appeal until that day because the copy machines were broken during the relevant time period, and asking that Petitioner's late filing be excused. ECF No. 1-2 at 15. This letter would seem to explain the delay in filing between November 23, 2021, and December 19, 2021. While it does not explain the delay between December 19, 2021, and December 28, 2021, the Court considers the late initial filing to have been excused because the Regional Director accepted the late-filed appeal and considered it on the merits. The Court therefore does not consider the untimely BP-10 appeal a basis for dismissal of the present petition.

Following submission of the BP-10 appeal to the Regional Director, there appears to have been some processing delay. The Regional Director's response, with an extension of time, was due by February 26, 2022. ECF No. 1-2 at 10 (notification dated January 4, 2022, stating that additional time was needed for Regional Director to respond to BP-10 received December 28, 2021, and setting response date as February 26, 2022). The Regional Director's response to Petitioner's third-level appeal, although dated February 25, 2022, was not mailed until March 23, 2022. ECF No. 1-2 at 2; *see also id.* at 5 (noting the timestamp of the cover sheet), 6 (the Regional Director's response, dated February 25, 2022). Petitioner claims not to have received it until April

9

16, 2022. *Id.* at 2. Nonetheless, on March 9, 2022,[2] Petitioner timely submitted his fourth-level appeal on the BP-11 form to the BOP's General Counsel, despite not then having heard back from the Regional Director. Magnusson Decl., ECF No. 5-2, ¶ 17; ECF No. 5-3 at 20.

The General Counsel rejected Petitioner's fourth-level appeal on April 1, 2022, because Petitioner did not provide a copy of the regional appeal or the response from the Regional Director. Magnusson Decl., ECF No. 5-2, ¶ 17; ECF No. 5-3 at 20. The rejection notice advised Petitioner that he could resubmit his appeal in proper form within fifteen days. Magnusson Decl., ECF No. 5-2, ¶ 17; ECF No. 5-3 at 20. Petitioner claims he received the Regional Director's rejection notice on April 16, 2022, and it is possible he could have established good cause for failing to resubmit the BP-11 form with the Regional Director's response before April 16 (fifteen days after the April 1 rejection by the General Counsel) because he had not yet received it. ECF No. 1-2 at 2. Once he received the Regional Director's response, however, Petitioner waited another twenty-three days, until May 9, 2022, to resubmit his BP-11 appeal; on May 18, 2022, that fourth-level appeal was denied as untimely filed. Magnusson Decl. ¶ 18; ECF No. 5-3 at 19. Petitioner was advised that he could resubmit the fourth-level appeal to the General Counsel if he provided staff verification for the delay in filing, but he never resubmitted the appeal. Magnusson Decl. ¶¶ 18–19.

Based on these facts—contained in the petition, the exhibits attached to it, and other documents that are integral to it and not reasonably subject to dispute—it is clear that Petitioner has not properly exhausted his administrative remedies. Although he timely submitted his original

---

[2] Petitioner states that he filed the BP-11 form on March 7, 2022, ECF No. 1-2 at 7, but Respondent's records provide the date of filing as March 9, 2022. As there is no dispute that the BP-11 form was timely filed within thirty days of the Regional Director's February 25, 2022, response, the Court does not address this discrepancy further.

fourth-level appeal on the BP-11 form to the BOP's General Counsel, that office notified him that his appeal was improper because it did not attach a copy of the third-level regional appeal, and he was given an additional fifteen days to resubmit the fourth-level appeal to the General Counsel. When Petitioner did not timely resubmit the appeal, he was given another opportunity to justify the delay, of which he did not avail himself.  Thus, the Court cannot find that he has exhausted his administrative remedies.  As noted above, "[f]ailure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused."  *Rosenthal*, 667 F. Supp. 2d at 366.  *See also Gordon*, 2008 WL 4179233, at *3 (concluding that, because the § 2241 petitioner's "appeal to the General Counsel was twice rejected for procedural defects, it could not be considered 'accepted,'" thus the petitioner procedurally defaulted).

Petitioner argues that exhaustion of administrative remedies should be excused in his case because "legitimate circumstances beyond [his] control preclude[d] him from fully pursuing his administrative remedies."  Mem. in Supp. of Pet. ¶ 12 (quoting *Barber v. Perdue*, No. 9:11-CV-0127 (NAM/DEP), 2012 WL 5996342, at *5 (N.D.N.Y. Nov. 9, 2012), *report and recommendation adopted*, No. 9:11-CV-0127 (NAM/DEP), 2012 WL 5996866 (N.D.N.Y. Nov. 30, 2012), in turn quoting *Carmona*, 243 F.3d at 634).  While this argument does not fall into any of the specified categories for excusal of the judicial exhaustion requirements, *see Beharry*, 329 F.3d at 62, the Court nonetheless addresses it.  Specifically, Petitioner cites the delayed receipt of the Regional Director's decision regarding his third-level appeal as the reason he could not pursue his fourth-level appeal.  Mem. in Supp. of Pet. ¶ 12.  But it is clear that the Regional Director's delay in responding to his third-level appeal did not stop him from pursuing his administrative

11

remedies. Rather, the BOP's administrative grievance process permitted him to submit the fourth-level appeal if he did not "receive a response within the time allotted for reply," 28 C.F.R. § 542.18. Courts have required an inmate to proceed with the next step in the grievance procedure, even in the absence of a BOP official's response to the prior step, in order to properly exhaust the available administrative remedies. *Milchin v. Warden*, No. 3:21-cv-1361 (KAD), 2022 WL 1104963, at *4 (D. Conn. Apr. 13, 2022) (holding that delay attributed to Regional Director did not prevent inmate from appealing to General Counsel and, because inmate failed to do so, inmate failed to exhaust administrative remedies); *Rosales v. Petrucci*, No. 20-CV-2136 (CS), 2021 WL 5449701, at *4 (S.D.N.Y. Nov. 22, 2021) (declining to excuse exhaustion requirement where inmate failed to pursue appeal after prison warden failed to respond within the time allotted).

Here, Petitioner in fact did not wait to receive the Regional Director's response before filing his fourth-level appeal. Rather, Petitioner proceeded to file his fourth-level appeal on March 9, 2022, *before* he heard back from the Regional Director. In other words, the fact that he did not timely receive the Regional Director's response to his third-level appeal did not prevent Petitioner from filing a fourth-level appeal to the General Counsel. Rather, Petitioner's failure to exhaust occurred at the General Counsel level, when he failed to timely resubmit his appeal with the response from the Regional Director. Even then, he was given an opportunity to resubmit his appeal to the General Counsel with justification for the untimely filing, at which point he could have explained that he had not timely received the Regional Director's response, but he failed to do so. Magnusson Decl., ECF No. 5–2, ¶ 18. Given that he failed to timely submit his appeal for General Counsel review (or justify why it was submitted late), the Court cannot conclude that he has exhausted the available administrative remedies.

The requirement of exhaustion of administrative remedies serves "two main purposes." *Woodford*, 548 U.S. at 89 (addressing exhaustion requirements under the Prisoner Litigation Reform Act). First, exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Id.* (cleaned up). Second, exhaustion promotes efficiency because "[c]laims can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Were the Court to entertain the petition on the merits when Petitioner has not exhausted his administrative remedies—or provided a legally sufficient explanation why the exhaustion requirement should be excused—the purposes of the exhaustion requirement would not be served. Because Petitioner did not conclude the administrative remedy process, the BOP was not given a full opportunity to address Petitioner's claim prior to the filing of the instant habeas petition. Therefore, the Court concludes that Petitioner has procedurally defaulted, and the petition must be dismissed.

In light of this holding, the Court need not consider Respondent's remaining grounds for dismissal.

### IV. CONCLUSION

Respondent's motion to dismiss the petition for writ of habeas corpus, ECF No. 5, is **GRANTED**. Any appeal of this order would not be taken in good faith.

The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 1st day of December, 2022, at Hartford, Connecticut.

                                  */s/ Sarala V. Nagala*
                                  SARALA V. NAGALA
                                  UNITED STATES DISTRICT JUDGE